People v Hinchey (2025 NY Slip Op 01262)

People v Hinchey

2025 NY Slip Op 01262

Decided on March 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 6, 2025

113535
[*1]The People of the State of New York, Respondent,
v
Jason Hinchey, Appellant.

Calendar Date:January 9, 2025

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Lynch, JJ.

Jane M. Bloom, Monticello, for appellant.
Emmanuel C. Nneji, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.

Garry, P.J.
Appeal from a judgment of the County Court of Ulster County (James Farrell, J.), rendered March 11, 2022, upon a verdict convicting defendant of the crimes of aggravated family offense (three counts) and bail jumping in the second degree.
Following a domestic dispute on March 28, 2019, defendant was charged by indictment with three counts of aggravated family offense for the specified offenses of criminal obstruction of breathing or blood circulation (count 1), assault in the third degree (count 2) and unlawful imprisonment in the second degree (count 3). He later failed to appear in court and was charged, in a separate indictment, with bail jumping in the second degree. The People's motion to consolidate the indictments for trial was granted, and, following a jury trial, defendant was convicted as charged. County Court sentenced him to a prison term of 1&frac13; to 4 years for each conviction and directed that the sentences on counts 2 and 3 run concurrently to each other but consecutively to count 1 and that his sentence for bail jumping run consecutively to counts 1 through 3, resulting in an aggregate prison term of 4 to 12 years.[FN1] Defendant appeals.
We initially reject the argument that County Court abused its discretion in granting the People's motion to consolidate the indictments for trial. Joinder of multiple offenses is authorized when, "[e]ven though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first" (CPL 200.20 [2] [b]; see CPL 200.20 [4]; People v Lane, 56 NY2d 1, 7 [1982]). Here, proof of the aggravated family offenses would have been relevant and admissible to establish defendant's motive in a trial on the later bail jumping charge, and proof of defendant's bail jumping would have been relevant and admissible as evidence of his consciousness of guilt in a trial on the aggravated family offenses (see People v Contreras, 191 AD2d 235, 236 [1st Dept 1993], lv denied 82 NY2d 716 [1993], cert denied 511 US 1040 [1993]; cf. People v Watkins, 180 AD3d 1222, 1234 [3d Dept 2020], lv denied 35 NY3d 1030 [2020]; People v Torra, 309 AD2d 1074, 1075 [3d Dept 2003], lv denied 1 NY3d 581 [2003]; see generally People v Doe, 148 Misc 2d 120, 121-124 [Sup Ct, NY County 1990]). We share County Court's view that defendant failed to make any persuasive argument of undue prejudice arising from consolidation (see People v Torra, 309 AD2d at 1075), particularly when considering that defendant ultimately elected to assert defenses regarding his motive and intent (see Penal Law §§ 25.00, 35.15; 215.59).
We also discern no issue with respect to County Court's handling of the prior bad act evidence — specifically, evidence of three prior incidents of physical violence and[*2]/or verbal threats by defendant toward the victim from within the year preceding the subject March 28, 2019 incident, as well as a March 13, 2019 conviction for his false imprisonment of her as part of one of those incidents. This prior behavior provided relevant background as to the dynamic between defendant and the victim and was directly relevant to defendant's motive and intent, again notably in the face of his justification defense as to counts 2 and 3 (see People v Dorm, 12 NY3d 16, 19 [2009]; People v Pitt, 170 AD3d 1282, 1284 [3d Dept 2019], lv denied 33 NY3d 1072 [2019]; People v Knox, 167 AD3d 1324, 1325-1326 [3d Dept 2018], lv denied 33 NY3d 950 [2019]; see generally People v Molineux, 168 NY 264, 293 [1901]).[FN2] We further agree with the court that the probative value of the evidence outweighed any unfair prejudice to defendant, notwithstanding the similarity between the prior bad acts and the charged conduct, and any such prejudice was minimized by timely and appropriate limiting instructions (see People v Dorm, 12 NY3d at 19; People v Cole, 215 AD3d 1064, 1065-1066 [3d Dept 2023], lv denied 40 NY3d 927 [2023]; People v LaDuke, 204 AD3d 1083, 1088 [3d Dept 2022], lv denied 38 NY3d 1072 [2022]; compare People v Elmy, 117 AD3d 1183, 1186-1187 [3d Dept 2014]; People v Westerling, 48 AD3d 965, 968 [3d Dept 2008]). The court's Sandoval ruling, concerning the same evidence, was also a provident exercise of discretion given defendant's demonstrated determination to further his self-interest in derogation of the interests of others and the attendant possibility that he would choose to act similarly on a witness stand (see People v Sandoval, 34 NY2d 371, 377 [1974]; see also People v Hayes, 97 NY2d 203, 205-206, 208 [2002]).
Defendant lastly argues that County Court was required to run his sentences on counts 1 through 3 concurrently. We disagree. Although the imposition of concurrent or consecutive sentences is a matter generally entrusted to the discretion of the court (see Penal Law § 70.25), Penal Law § 70.25 (2) does mandate that concurrent sentences be imposed "(1) where a single act constitutes two offenses, or (2) where a single act constitutes one of the offenses and a material element of the other" (People v Laureano, 87 NY2d 640, 643 [1996]; accord People v Brahney, 29 NY3d 10, 14 [2017]; People v Couser, 28 NY3d 368, 375 [2016]). "[T]o determine whether consecutive sentences are permitted, a court must first look to the statutory definitions of the crimes at issue to discern whether the actus reus elements overlap" (People v Rodriguez, 25 NY3d 238, 244 [2015] [internal quotation marks and citation omitted]; see People v Brahney, 29 NY3d at 14; People v Ramirez, 89 NY2d 444, 451 [1996]). In other words, "the court must determine whether the actus reus element is, by definition, the same for both offenses (under the first prong of the statute), or if the actus reus for one offense is, by definition, a material element of the second offense[*3](under the second prong)" (People v Laureano, 87 NY2d at 643 [emphasis omitted]; see People v Wright, 19 NY3d 359, 363-364 [2012]; People v Day, 73 NY2d 208, 211 [1989]). If it is neither, then the People have satisfied their burden to demonstrate the legality of consecutive sentencing (see People v Brahney, 29 NY3d at 14-15; People v Laureano, 87 NY2d at 643; People v Day, 73 NY2d at 211).
The specified offenses underlying the aggravated family offense counts are criminal obstruction of breathing or blood circulation, assault in the third degree and false imprisonment in the second degree (see generally Penal Law § 240.75 [1]; CPL 530.11 [1] [e]). We compare the first two in evaluating County Court's consecutive sentencing decision. As charged here, the actus reus — or "[a]ct," meaning "bodily movement" (Penal Law § 15.00 [1]; see People v McKnight, 16 NY3d 43, 48 [2010]) — that constitutes criminal obstruction of breathing or blood circulation is applying pressure to the throat or neck of another (see Penal Law § 121.11 [a]). The actus reus required for the manner of assault in the third degree charged here is conduct causing physical injury to another (see Penal Law § 120.00 [1]), "[p]hysical injury" being defined as either "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). Although the Penal Law requires "no particular degree" of pain or impairment to satisfy the element of physical injury (People v McDowell, 28 NY2d 373, 375 [1971]), objectively, the application of pressure contemplated by Penal Law § 121.11 cannot satisfy it (see People v Chiddick, 8 NY3d 445, 447 [2007]; People v Lewis, 294 AD2d 847, 847 [4th Dept 2002]); indeed, the obstruction of breathing offense was created to provide redress for the suffering endured by victims of domestic violence whose batterers employed such methods of control but caused no demonstrable pain, physical trauma or injury (see People v Figueroa, 40 Misc 3d 1010, 1012-1018 [City Ct, City of Rye 2013]; compare Penal Law §§ 121.12 [requiring that a person commit the crime of criminal obstruction of breathing or blood circulation and thereby cause "stupor, loss of consciousness for any period of time, or any other physical injury or impairment"], 121.13 [requiring that a person commit the crime of criminal obstruction of breathing or blood circulation and thereby cause "serious physical injury"]). The statutory overlap addressed by Penal Law § 70.25 (2) is therefore not present here (see People v McGovern, 42 NY3d 532, 536-537 [2024]; compare People v Brahney, 29 NY3d at 16; People v Sturkey, 77 NY2d 979, 980 [1991]), and the imposition of consecutive sentences was thus left to the discretion of County Court (see People v Day, 73 NY2d at 212).[FN3] To the extent that the court's exercise of that discretion is challenged, we find no abuse thereof under these facts, where defendant repeatedly punched the victim in her head before placing his hand around her throat and covering her face [*4]with a pillow (see generally People v Ramirez, 89 NY2d at 450).
Egan Jr., Aarons, Pritzker and Lynch, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: To the extent that the Criminal Disposition Report in the record reflects otherwise, we rely on the unambiguous sentencing transcript.

Footnote 2: As defendant acknowledges, in the absence of a stipulation, his March 13, 2019 conviction was also admissible to satisfy an essential element of the aggravated family offense counts (see CPL 200.63).

Footnote 3: In light of our conclusion that there is no overlap under either prong of Penal Law § 70.25 (2), we need not address defendant's argument as to whether his offenses in this single criminal transaction should be deemed separate and distinct acts for restrictive sentencing purposes (see generally People v Brahney, 29 NY3d at 14-15).